## SANDY JONES v. THE STATE.

1. INDICTMENT.— Article 420 of the Code of Criminal Procedure directs that an indictment shall bear the signature of the foreman of the grand jury, but article 529 expressly provides that the want of such signature shall not constitute cause of exception to the form of an indictment. The validity of an indictment, therefore, is not affected by the failure of the foreman of the grand jury to sign it.

2. SAME — ARREST OF JUDGMENT.— Exception to an indictment which goes to the form merely, and not to the substance, is not available by a motion in arrest of judgment.

3. PRACTICE — EVIDENCE.— When it appears that the defendant himself, upon the cross-examination of a State's witness, elicited objectionable or immaterial evidence, he cannot be heard to complain of evidence of similar import adduced by the prosecution.

4. EVIDENCE OF GENERAL CHARACTER.— In a criminal prosecution when guilty knowledge or criminal intention is of the essence of the offense, it is competent for the defendant to put his general character in evidence with respect to the offense charged against him. See the opinion *in extenso* on the question.

5. RAPE — CHARGE OF THE COURT — FORCE.— In a prosecution for rape alleged to have been effected by means of "force and threats," the charge of the court is insufficient unless in defining "force" it defines it as "such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case."

6. SAME — THREATS.— When the rape is alleged to have been effected by means of "threats," the jury should be instructed that the threats used "must be such as might reasonably create a just fear of death or great bodily harm, in view of the relative condition of the parties as to health, strength, and all other circumstances of the case."

APPEAL from the District Court of Navarro. Tried below before the Hon. L. D. BRADLEY.

The indictment charged the appellant with the rape of Katy Templeton, laid the venue in Navarro county, Texas, and the date of the offense, January 22d, 1881. He was found guilty upon his trial, and his punishment was assessed at a term of 39 years in the penitentiary.

Katy Templeton, the woman alleged to have been out-

raged, was the first witness introduced by the State. The substance of her testimony was that she lived in a house with Jennie Ford, on the east side of the railroad. About two o'clock A. M. on Sunday, about three weeks previous to this trial, she was awakened by finding some one in bed with her. Throwing out her hands she felt the face and head of a man, and by the feeling of the hair knew that he was a negro. The witness screamed once as loud as she could, when the man choked her, and said, "if you scream again, I will put you out of the window and kill you, you d—d bitch." He then crammed one handkerchief into her mouth, tied another around her mouth, and ravished her. The witness screamed no more, but struggled as long as she could. After staying with the witness about two hours, the defendant got up and made the witness open the door. He then took the handkerchiefs from around her head and mouth, and out of her mouth, and as he left, turned and said to witness, "if you ever tell this or have me arrested I will kill you." The witness saw by the moonlight, which struck him as he went out, that the man was a large negro, about six feet high, wearing a dark looking coat and shirt, and white striped pants. As he walked off he took a pair of red looking gloves from his pocket, and the defendant had on the same gloves when Mr. Robinson, the policeman, brought him to Callie Thomas' house after arresting him. The witness lay awake until after daylight, and when she arose at about eight o'clock she found one Henry Stall in another room in the house occupied by a woman named Mattie Keith. She told Stall of what happened the night before, and was advised by him to say nothing about it until the return of Jennie Ford and Mattie Keith, who had gone to Mexia. She adopted this advice, and on telling the two women was advised by Jennie Ford to seek the arrest of the negro, and by Mattie Keith to say nothing about it.

The cross-examination was but a more detailed narrative, and in no way affected that in chief. The witness positively identified the appellant as the man who raped her; and testified that he had forced carnal intercourse with her one time, effecting penetration. She denied that she had ever received money from the defendant, or that she had ever asked him for money, or invited him to visit her at the house and spend the night with her.

Jennie Ford, proprietress of the house at which the last witness resided, testified for the State, that on the Friday preceding the alleged assault, herself and Mattie Keith went to Mexia and returned the following Monday. On her return Katy Templeton told her that on Saturday night a negro came into her room and committed a rape on her. The witness asked why she did not have him arrested. The witness was present at the house of Callie Thomas when the defendant was brought there under arrest. Katy Templeton was either there at the time or came soon after, and identified the appellant as the man who raped her. She spoke of his face, his gloves and white striped pants.

The entire evidence located three houses of prostitution in close proximity, one occupied by "Indian Mollie" and others, another by Callie Thomas and others, and the third by Jennie Ford, Mattie Keith, and this prosecutrix. Gus Robinson, night policeman, testifying for the State said that on Monday or Tuesday, he and Jack Ricker were down in the neighborhood of Callie Thomas', when they met the defendant. He told them there that some ten or fifteen men were down at Indian Mollie's "raising hell." When the witness and Ricker got there they could hear but two voices, which they took to be those of a man and woman, and returned. That night at about one or two o'clock the witness was sent for by Callie Thomas, but did not go down until next morning, when she told him that during the night a negro man had dragged her out

of the window and attempted to ravish her. She described the man, and from the description the witness suspected the defendant. As he was leaving, Katy Templeton hailed him and told him of her being ravished on the Saturday night before. This description also led the witness to suspect the defendant and he arrested him.

"Waco" Mollie, for the defense, testified that she occupied the house directly west of, and about 20 feet distant from that occupied by Katy Templeton. On the night of the alleged rape the witness was sick and awake nearly the whole night from two o'clock until day, but heard no disturbance or noise from the house in which the offense was alleged to have been committed. She saw Katy Templeton next morning, but heard nothing from her about the alleged rape. She saw no signs of violence about her face or mouth, and noticed nothing unusual about Katy. The latter complained of not being very well. The testimony of Anna Wheeler, who lived in the house east and about twenty feet from that of the prosecutrix, was in effect about the same as that of "Waco" Mollie.

Several witnesses testified to the good reputation of the defendant with reference to his relations with women. The women who testified in this case and occupied the houses described were shown to be prostitutes.

*J. F. Stout,* for the appellant.

*Horace Chilton,* Assistant Attorney General, for the State.

WINKLER, J. This appeal is from a judgment of conviction for rape, the punishment assessed being confinement in the State penitentiary for thirty-nine years.

The sufficiency of the indictment is questioned by a motion in arrest of judgment, the objection being that it is not signed by the foreman of the grand jury. It is no

longer an open question in this State that the objection is not tenable, either as an exception to the form or to the substance of an indictment or information, that the one is not signed by the foreman or the other by the county attorney or the attorney representing the State. It is true that in prescribing the requisites of an indictment, art. 420, Code of Criminal Procedure, states in clause 9 that it shall be signed officially by the foreman of the grand jury; yet, when the Code provides the exceptions which may be taken to the form of an indictment or information, the want of the signature of the foreman of the grand jury, or, in case of an information, the want of the signature of the attorney representing the State, is specially excepted from the other grounds of objection which may be reached in this manner. Art. 529.

These two provisions of the Code of Procedure are found in the last revision of the Texas Codes. On examination it will be found, however, that the language employed in the revised articles is identical with former provisions with regard to the present inquiry, and hence adjudications under the former statutes apply with equal force to the present provisions. By former decisions it has been uniformly held that the fact that the foreman of the grand jury had omitted to sign his name officially to an indictment was wholly immaterial so far as the accused is concerned, though the signature is commendable so far as the regularity of the the proceedings before the grand jury is concerned; and these decisions are in harmony with the evident meaning of the provisions of the Code cited above. See the cases collated in *Campbell* v. *State*, 8 Texas Ct. App. 84. But, further, the objection here raised to the indictment is one not of substance but one of form merely, and hence not available by motion in arrest of judgment. *Jenks* v. *State*, 5 Texas Ct. App. 68. The particular objection urged against the indictment in this case, however, is not available to the de-

fendant, as an exception either to the form or the substance of the indictment. The court below did not err in over-ruling the defendant's motion in arrest of judgment.

On the trial a bill of exceptions consisting of two sep-arate, independent paragraphs was reserved to rulings of the court on the evidence. The first paragraph of the bill recites that testimony which to our minds was wholly irrelevant was permitted to go to the jury over objections of the defendant's counsel, which testimony, if stripped of the attendant circumstances, would have been erro-neously admitted and would doubtless have been excluded by the judge presiding. It is, however, shown by a statement of the judge, appended to this paragraph of the bill of exceptions, that the door to the admission of the questionable evidence was opened by the defendant on the cross-examination by the defendant's counsel of the prosecuting witness, the party upon whom the offense is alleged to have been committed, eliciting evidence sim-ilar in character to that complained of. In this ruling we find no error.

In the second part of the bill of exceptions it is recited that the defendant offered proof of his general character, by witnesses who had known him for ten years and knew his general character; which the court refused to permit, on objection of the prosecuting attorney. In this ruling we are of opinion the court erred. *Coffee* v. *State,* 1 Texas Ct. App. 584. The defendant was entitled to place the weight of his character into his end of the scale,— the inquiry being directed to the probability that he would commit the crime charged against him,— for what it was worth in the estimation of the jury, in connection with the other facts in evidence. The State would not ordi-narily be permitted to introduce proof of the general bad character of a defendant on trial. The defendant may introduce evidence of general good character, and having done so the State would then be entitled to disprove the

evidence of good character by the means at hand in rebuttal.

To render evidence of the good character of the defendant available to him the examination should embrace the idea whether one of good character would likely commit the particular offense for which he was being tried, or as Mr. Greenleaf expresses it: "The evidence, when admissible, ought to be restricted to the trait of character which is in issue; or, as it is elsewhere expressed, ought to have some analogy and reference to the nature of the charge, it being obviously irrelevant and absurd, on a charge of stealing, to inquire into the prisoner's loyalty, or on a trial for treason to inquire into his character for honesty in his private dealings." 3 Greenl. Ev. § 25. It must be borne in mind, however, that it is not in all public prosecutions for breach of law that evidence of a party's general character is admissible. The rule seems to be that whenever, in a criminal prosecution, guilty knowledge or criminal intention is of the essence of the offense, evidence of the general character of the party is relevant to the issue and therefore admissible; but when a penalty is claimed for the mere act, irrespective of the intention, it is not. 3 Greenl. Ev. § 26. It will be observed that Mr. Greenleaf deduces the rule from Chief Baron Eyre, quoted as having said that in a direct prosecution for a crime such evidence is admissible, but when the prosecution is not directly for the crime, but for the penalty, it is not. See authorities cited in note 1 to the section last quoted. In our opinion a defendant, when charged with and on trial for crime, is at liberty to put his general character in evidence if he so desire, with the limitations above stated, and subject to the right of the State to rebut the proof so offered. *Lockhart* v. *State*, 3 Texas Ct. App. 567.

The third paragraph of the charge is as follows: "If you believe from the evidence that the said Katy Tem-

pleton was unwilling to have sexual intercourse of a carnal nature with the defendant Sandy Jones, but that she acquiesced and did permit defendant to have carnal knowledge of her person under fear of death or serious bodily injury, induced by threats made against her or to her by the defendant, then you are instructed that in law such carnal knowledge of her person was without her consent, and the defendant in such case would be guilty of rape." The charge in the indictment is that the defendant, after making the assault, "her, the said Katy Templeton, then and there by force and by threats, and against her will, feloniously did," etc.

By force and by threats, the indictment charges. The testimony of the injured female is to the effect that both force and threats were employed by the defendant in the accomplishment of his purpose. The charge should have informed the jury with reference to the feature of force employed, as laid down in the statute (Penal Code, art. 529), to wit: that it must be "such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties, and other circumstances of the case." And on the subject of threats the jury should have been instructed that the threats used in order to effect the purpose of the defendant "must be such as might reasonably create a just fear of death or great bodily harm, in view of the relative condition of the parties as to health, strength, and all other circumstances of the case." Penal Code, art. 530. These additions to the charge seem to be indicated by the Code in order that the jury might be enabled to understand what is meant by the terms *force* and *threats*, as a part of the law of the case, and should have been given, whether asked or not, especially in so grave a felony as the present. *Jenkins* v. *State*, 1 Texas Ct. App. 346.

Other errors are assigned, but which it is not deemed

important to consider at present, for the reason that they are deemed unimportant or susceptible of easy correction on another trial. For error in the rulings on the evidence, and because of the omission in the charge as above set out, the judgment must be reversed and the case remanded for a new trial.

*Reversed and remanded.*